FILED

OCT 02 2024

Clerk of the Appellate Courts

REc'd By _____

# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE
### May 15, 2024 Session

## DAVID ASHLEY LEONARD v. KIMBERLY CHAMPION LEONARD

**Appeal from the Chancery Court for Bradley County**
**No. 2021-CV-253     Jerri S. Bryant, Chancellor**

---

### No. E2023-01002-COA-R3-CV

---

In this divorce action, the wife appeals the trial court's distribution of the marital estate, the duration of the transitional alimony awarded to her, and the denial of her request for attorney's fees and expenses as alimony *in solido*. The husband challenges the trial court's decision to award any transitional alimony to the wife. Discerning no reversible error, we affirm. We deny the parties' respective requests for attorney's fees on appeal.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed; Case Remanded**

THOMAS R. FRIERSON, II, J., delivered the opinion of the court, in which D. MICHAEL SWINEY, C.J., and JOHN W. MCCLARTY, J., joined.

Philip M. Jacobs, Cleveland, Tennessee, for the appellant, Kimberly Champion Leonard.[1]

Jeremy M. Cothern, Bryson A. Lype, and Louis J. Bernsen, Chattanooga, Tennessee, for the appellee, David Ashley Leonard.

### OPINION

#### I. Factual and Procedural Background

The plaintiff, David Ashley Leonard ("Husband"), and the defendant, Kimberly Champion Leonard ("Wife"), were married in October 2015. According to the trial court's judgment, this was the third marriage for Husband and the fourth for Wife. No

---

[1] The appellant testified at trial that her first name was "Kim," and in her answer to the complaint for divorce, stated that her name was Kim, "not 'Kimberly.'" However, in the style of the case throughout this action and in the appellant's briefs on appeal, her given name is stated as "Kimberly." For the sake of consistency in this Opinion, we will refer to the appellant's given name as "Kimberly" during the divorce proceedings. No disrespect is intended.

children were born to this marriage, and at the time of trial, neither party had any minor children. The parties separated on July 11, 2021.

On July 27, 2021, Husband filed a complaint for divorce in the Bradley County Chancery Court ("trial court"), alleging grounds pursuant to Tennessee Code Annotated § 36-4-101(a)(3) (adultery), (11) (inappropriate marital conduct), and (12) (indignities rendering the spouse's position intolerable), or in the alternative, (14) (irreconcilable differences). Husband requested that he be awarded, *inter alia*, the improved real property located at Lead Mine Valley Road in Cleveland, Tennessee ("Marital Residence"), attorney's fees, and "his respective accounts, including but not limited to bank accounts, savings accounts, pension accounts, 401(K) and/or retirement accounts," as well as an "equitable portion" of any accounts held by Wife.

The Bradley County General Sessions Court ("general sessions court") subsequently transferred a file to the trial court related to a petition for an order of protection filed by Wife on July 13, 2021. Following a hearing conducted after the general sessions court had transferred the case, the trial court entered a one-year order of protection on September 1, 2021, barring Husband from having any contact with Wife. The trial court also directed Husband to move out of the Marital Residence and to refrain from coming around the home. In the order of protection, the trial court found that Husband had abused or threatened to abuse Wife during an incident that occurred on July 11, 2021.

In the trial court, Husband filed a motion for exclusive possession of the marital residence on August 18, 2021. He alleged that Wife had attacked him during the July 11, 2021 incident and that he had "suffered spine and neck injuries" and had been "forced to vacate" the Marital Residence. Husband averred that he operated his business, Warehouse Way Development, Inc. ("Warehouse Way"), out of the Marital Residence. He also claimed that Wife had "written several checks to herself, her daughter, and her daughter's boyfriend" using the Warehouse Way checkbook. Wife filed a response to Husband's motion, acknowledging that she had written "a check for $14,000 to herself out of the business account to protect her finances" and denying all other substantive allegations. On August 24, 2021, Wife filed a motion for exclusive possession of the Marital Residence, averring in part that she was the primary caretaker of the Marital Residence. Husband filed a response denying Wife's allegations. He reiterated his request for exclusive possession of the Marital Residence.

On September 14, 2021, Wife filed an answer and counter-complaint, denying all substantive allegations against her while admitting that the parties had irreconcilable differences. In her counter-complaint, Wife alleged grounds for divorce of inappropriate marital conduct, or in the alternative, irreconcilable differences. Wife requested

- 2 -

"transitional, temporary, rehabilitative and/or permanent alimony, including but not limited to her attorney's fees . . . ." Husband filed a response to the counter-complaint, denying Wife's allegation of inappropriate marital conduct and again requesting an award of attorney's fees.

Wife filed a petition for contempt on November 9, 2021, alleging that Husband had violated automatic statutory injunctions provided in Tennessee Code Annotated § 36-4-106(d)(1) by applying to refinance the mortgage associated with the Marital Residence, ceasing payment on the parties' AT&T bill, cancelling the parties' Ohio National Life Insurance policy, and "open[ing] an individual checking account to hide income from the parties' business." Wife also alleged that Husband had violated the order of protection by attempting to contact her through a third party. Husband filed a response to the petition, admitting that he had opened a separate bank account but denying that this was in violation of a statutory injunction. He denied all other substantive allegations. Husband reiterated his allegation that Wife had withdrawn thousands of dollars from the business bank account.

Wife filed a "Motion for Alimony Pendente Lite," on February 25, 2022, requesting that the trial court award to her $5,000.00 in attorney's fees and enter an "order designating which party is responsible for particular marital obligations." As evinced by a mediator's report filed on May 17, 2022, the parties participated in mediation without reaching any settlement.

On May 27, 2022, Wife filed a motion for attorney's fees related to the order of protection in the amount of $3,474.20. Wife subsequently filed a motion to extend the order of protection to remain in effect through the resolution of divorce proceedings pursuant to Tennessee Code Annotated § 36-3-603 (West July 1, 2017, to current). On September 14, 2022, Wife filed a motion for appraisal of six self-storage warehouse parcels and one vacant land parcel belonging to Warehouse Way. Wife requested an award of $6,500.00 in "discretionary [costs], property division, and/or alimony" for retention of an appraiser through The Haisten Group, LLC ("The Haisten Group"), to perform the appraisal and cover potential costs of the appraiser's testimony.[2] Wife concomitantly filed a motion to set the case for final hearing.

Husband filed an omnibus response to Wife's motions on November 16, 2022, agreeing solely with the motion to set a final hearing. He argued that the motion for attorney's fees related to the order of protection should be reserved for trial. He also contended that Wife's other three motions should be denied because (1) Wife had no

---

[2] In Wife's motion and the subsequent order authorizing retention of The Haisten Group, the appraisal company was mistakenly referred to as "the Hastings Group."

need for alimony *pendente lite*, her motion failed to account for funds she had withdrawn from the Warehouse Way account, and Husband did not have the ability to pay; (2) Tennessee Code Annotated § 36-3-603 was inapplicable because the complaint was filed before the order of protection was entered and because no extension of the order of protection was necessary; and (3) Warehouse Way was Husband's separate property, rendering an appraisal of its real property holdings unnecessary.

Following a hearing on Wife's motions, the trial court entered an order on January 24, 2023. The court granted Wife's motion for attorney's fees provided that Wife's former counsel would submit a supplemental affidavit attesting that the fees requested were related solely to the order of protection.[3] The court denied the motion to extend the order of protection, finding that Tennessee Code Annotated § 36-3-603 was inapplicable and noting that the order of protection was no longer in effect. Pursuant to the alimony factors provided in Tennessee Code Annotated § 36-5-121(i), the court determined that Wife had demonstrated a need for alimony *pendente lite* and that Husband possessed the ability to pay. The court directed Husband to pay the mortgage, insurance, taxes, and maintenance costs for the Marital Residence; $6,500.00 in discretionary costs for Wife to retain The Haisten Group; and $1,000.00 to Wife monthly. The court noted credibility concerns with both parties' testimonies and stated that "[e]ach party needs to tighten up on what their actual bills are." Upon consideration of Wife's former counsel's affidavit and Husband's objection to the affidavit, the trial court partially granted Wife's motion for attorney's fees, awarding to Wife $2,429.20 in an order entered on February 8, 2023.

On June 2, 2023, Wife filed a motion for attorney's fees and discretionary costs as alimony *in solido*. Two days earlier, Wife's current counsel had filed an affidavit of reasonable attorney's fees, reflecting a total balance owed of $24,299.00. On that same day, Husband had filed a response in opposition to Wife's motion for alimony *in solido*.

The trial court conducted a bench trial over the course of two days on April 23 and 25, 2023. In addition to the parties' testimonies, the court heard testimony from Husband's son, D.L.; Husband's daughter-in-law, B.L.; Wife's sister, G.A.; and the parties' neighbor, S.B. Prior to trial, Husband had filed a trial brief with a copy of Wife's deposition testimony and an excerpt from Husband's deposition testimony attached. At trial, the parties presented various exhibits, including financial records for the parties and

---

[3] Upon Husband's motion to disqualify Wife's former counsel based on an alleged conflict of interest and following a hearing, the trial court entered an agreed order on March 4, 2022, substituting Wife's appellate counsel in place of her former counsel. The trial court subsequently entered an order granting Husband's motion to disqualify Wife's former counsel. Husband's appellate counsel was substituted for Husband's initial counsel in an agreed order entered by the trial court on January 6, 2022.

- 4 -

Warehouse Way, The Haisten Group's appraisal, and a second appraisal of Warehouse Way's commercial property performed by the Henry B. Glascock Company.

In a final decree entered on June 6, 2023, the trial court granted a divorce to Wife on grounds of inappropriate marital conduct and indignities rendering her position intolerable. *See* Tenn. Code Ann. § 36-4-101(a)(11)-(12) (West 2007, to current). The court found that the events of July 11, 2021, had been "the precursor to this divorce" and that those events were "primarily Husband's fault." As to the parties' respective financial positions prior to the marriage, the court found that Wife had been employed as a bookkeeper but had voluntarily resigned her employment a few months before meeting Husband. Wife owned a home prior to the marriage, and she "testified that she netted $12,000 from the sale of her separate residence after it was improved with Husband's money during the marriage." The court found that "Wife's net worth, prior to this marriage, was between $12,000 and $17,000, including the equity in her home." By contrast, the court found that Husband had owned and managed two businesses prior to the marriage: Warehouse Way and Golf Carts of Chattanooga ("Golf Carts"). He had also owned a separate residence that became the parties' shared residence during the first three years of their marriage and was subsequently sold. The court found that "Husband's net worth prior to this marriage exceeded $1,000,000." During the marriage, Wife inherited approximately $56,000.00 from her mother, and this was undisputedly listed by the parties as Wife's separate property.

Overall, the trial court determined that "[t]his divorce involved a short-term marriage between two (2) mature individuals" and that the parties should therefore "be returned, as near as possible, to the positions they held prior to their marriage." The court specifically found that "Wife's proposed division of the alleged marital estate was unreasonable," noting that under Wife's proposal, she would have received the Marital Residence free of debt plus additional marital assets, "including those the Court has found to be Husband's separate property."

The parties presented a master asset list as an exhibit at trial. Utilizing this list as a guide, the trial court set forth what it found to be an equitable distribution of the agreed-upon marital property and then did the same with the disputed property items, awarding each of those to Husband or Wife as the court found appropriate. Designation of the Marital Residence was a point of contention throughout the divorce proceedings. The court determined that because the Marital Residence had been acquired during the marriage and titled in both parties' names, it was presumed to be marital property and that Husband had not rebutted this presumption. Finding the market value of the Marital Residence to be $400,000.00 and the parties' equity in it to be $128,000.00, the court awarded the Marital Residence to Husband, along with the related debt.

- 5 -

Although Wife conceded on the master asset list that Warehouse Way was Husband's separate property, she maintained that the Warehouse Way bank account was marital because she had contributed to its management. The trial court determined that both Warehouse Way and its account were Husband's separate property, specifically finding that Wife had failed to establish any significant contribution to Warehouse Way. The court found that Wife had taken "somewhere between $30,000 and $40,000 from the Warehouse Way bank account" "without Husband's consent" and had "spent this money during the pendency of the divorce." It was undisputed that Husband had sold his other business, Golf Carts, during the marriage. Wife had been employed for a time as a bookkeeper for Golf Carts, and the trial court determined that she had been paid for her work there.

The trial court awarded what it found to be $28,000.00 in marital personal property to Husband and $14,000.00 in marital personal property to Wife. The court determined, however, that Wife's award "must be increased by including the $14,000 Wife took from the Warehouse Way account, the $6,500 she requested and received from [the trial court] to have an appraiser value Warehouse Way, and $4,000 of alimony *pendente lite* she received from Husband." The court thereby concluded that Wife had "approximately $94,000 of value between her separate property and her awarded portion of the marital property after including these additional amounts." The court awarded to Wife an additional $25,000.00 in equity from the Marital Residence, which the court permitted Husband to pay in twelve monthly installments to begin the month after the divorce decree's entry.

Regarding Wife's request for spousal support, the trial court considered the factors provided in Tennessee Code Annotated § 36-5-121(i) and awarded to Wife $1,500.00 monthly in transitional alimony for six months. The court also ordered that Wife would be allowed to reside at the Marital Residence for six months following entry of the final decree with the house payment and taxes paid by Husband.

Setting a separate hearing concerning Wife's request for attorney's fees as alimony *in solido*, the trial court certified its final decree as a final judgment pursuant to Tennessee Rule of Civil Procedure 54.02. Following a subsequent hearing, the court entered an order on June 9, 2023, denying Wife's request for attorney's fees. Wife timely appealed.

## II. Issues Presented

Wife has presented four issues on appeal, which we have reordered and restated as follows:

1. Whether the trial court erred in its division of the marital estate by placing undue emphasis on the length of the marriage.

2. Whether the trial court abused its discretion by not awarding to Wife a longer period of transitional alimony.

3. Whether the trial court abused its discretion by denying Wife's request for an award of attorney's fees as alimony *in solido*.

4. Whether Wife should be awarded her attorney's fees on appeal as the economically disadvantaged spouse.

Husband has raised two additional issues, which we have likewise restated:

5. Whether the trial court erred by finding that Wife had the need for spousal support and awarding to her a total of $9,000.00 in transitional alimony.

6. Whether Husband is entitled to an award of attorney's fees on appeal because Wife's appeal is frivolous.

III. Standard of Review

In a case involving the proper classification and distribution of assets incident to a divorce, our Supreme Court has explained the applicable standard of appellate review as follows:

This Court gives great weight to the decisions of the trial court in dividing marital assets and "we are disinclined to disturb the trial court's decision unless the distribution lacks proper evidentiary support or results in some error of law or misapplication of statutory requirements and procedures." *Herrera v. Herrera*, 944 S.W.2d 379, 389 (Tenn. Ct. App. 1996). As such, when dealing with the trial court's findings of fact, we review the record de novo with a presumption of correctness, and we must honor those findings unless there is evidence which preponderates to the contrary. Tenn. R. App. P. 13(d); *Union Carbide Corp. v. Huddleston*, 854 S.W.2d 87, 91 (Tenn. 1993). Because trial courts are in a far better position than this Court to observe the demeanor of the witnesses, the weight, faith, and credit to be given witnesses' testimony lies in the first instance with the trial court. *Roberts v. Roberts*, 827 S.W.2d 788, 795 (Tenn. Ct. App. 1991). Consequently, where issues of credibility and weight of testimony

are involved, this Court will accord considerable deference to the trial court's factual findings. *In re M.L.P.*, 228 S.W.3d 139, 143 (Tenn. Ct. App. 2007) (citing *Seals v. England/Corsair Upholstery Mfg. Co.*, 984 S.W.2d 912, 915 (Tenn. 1999)). The trial court's conclusions of law, however, are accorded no presumption of correctness. *Langschmidt v. Langschmidt*, 81 S.W.3d 741, 744-45 (Tenn. 2002).

*Keyt v. Keyt*, 244 S.W.3d 321, 327 (Tenn. 2007). *See Manis v. Manis*, 49 S.W.3d 295, 306 (Tenn. Ct. App. 2001) (holding that appellate courts reviewing a distribution of marital property "ordinarily defer to the trial judge's decision unless it is inconsistent with the factors in Tenn. Code Ann. § 36-4-121(c) or is not supported by a preponderance of the evidence."). The valuation of a marital asset is a question of fact. *Kinard v. Kinard*, 986 S.W.2d 220, 231 (Tenn. Ct. App. 1998).

Regarding spousal support, our Supreme Court has "repeatedly . . . observ[ed] that trial courts have broad discretion to determine whether spousal support is needed and, if so, the nature, amount, and duration of the award." *Gonsewski v. Gonsewski*, 350 S.W.3d 99, 105 (Tenn. 2011). The High Court has further explained:

[A] trial court's decision regarding spousal support is factually driven and involves the careful balancing of many factors. *Kinard v. Kinard*, 986 S.W.2d 220, 235 (Tenn. Ct. App. 1998); *see also Burlew* [*v. Burlew*], 40 S.W.3d [465,] 470 [(Tenn. 2004)]; *Robertson v. Robertson*, 76 S.W.3d 337, 340-41 (Tenn. 2002). As a result, "[a]ppellate courts are generally disinclined to second-guess a trial judge's spousal support decision." *Kinard*, 986 S.W.2d at 234. Rather, "[t]he role of an appellate court in reviewing an award of spousal support is to determine whether the trial court applied the correct legal standard and reached a decision that is not clearly unreasonable." *Broadbent v. Broadbent*, 211 S.W.3d 216, 220 (Tenn. 2006). Appellate courts decline to second-guess a trial court's decision absent an abuse of discretion. *Robertson*, 76 S.W.3d at 343. An abuse of discretion occurs when the trial court causes an injustice by applying an incorrect legal standard, reaches an illogical result, resolves the case on a clearly erroneous assessment of the evidence, or relies on reasoning that causes an injustice. *Wright ex rel. Wright v. Wright*, 337 S.W.3d 166, 176 (Tenn. 2011); *Henderson v. SAIA, Inc.*, 318 S.W.3d 328, 335 (Tenn. 2010). This standard does not permit an appellate court to substitute its judgment for that of the trial court, but "'reflects an awareness that the decision being reviewed involved a choice among several acceptable alternatives,' and thus 'envisions a less rigorous review of the lower court's decision and a decreased likelihood that the decision will be

reversed on appeal.'" *Henderson*, 318 S.W.3d at 335 (quoting *Lee Medical, Inc. v. Beecher*, 312 S.W.3d 515, 524 (Tenn. 2010)). Consequently, when reviewing a discretionary decision by the trial court, such as an alimony determination, the appellate court should presume that the decision is correct and should review the evidence in the light most favorable to the decision. *Wright*, 337 S.W.3d at 176; *Henderson*, 318 S.W.3d at 335.

*Id.* at 105-06 (footnotes omitted).

Respecting the trial court's decision concerning attorney's fees in a divorce action, this Court has stated:

Our review of an award of attorney's fees is guided by the principle that "'the allowance of attorney's fees is largely in the discretion of the trial court, and the appellate court will not interfere except upon a clear showing of abuse of that discretion.'" *Mimms v. Mimms*, 234 S.W.3d 634, 641 (Tenn. Ct. App. 2007) (quoting *Taylor v. Fezell*, 158 S.W.3d 352, 359 (Tenn. 2005)). "Reversal of the trial court's decision [regarding] attorney fees at the trial level should occur 'only when the trial court applies an incorrect legal standard, reaches a decision that is illogical, bases its decision on a clearly erroneous assessment of the evidence, or employs reasoning that causes an injustice to the complaining party.'" *Church v. Church*, 346 S.W.3d 474, 487 (Tenn. Ct. App. 2010).

*Hernandez v. Hernandez*, No. E2012-02056-COA-R3-CV, 2013 WL 5436752, at *8 (Tenn. Ct. App. Sept. 27, 2013).

IV. Equitable Distribution of Marital Estate

Wife contends that the trial court erred in its distribution of the marital estate by placing undue emphasis on the duration of the parties' marriage. She argues that the court did not adequately consider statutory factors regarding the relative ability of each party to earn future income, Wife's contributions to the parties' assets, Wife's age at the time of the divorce, and the reduction in Wife's Social Security benefits purportedly caused by the marriage. *See* Tenn. Code Ann. § 36-4-121(c). Husband responds that the trial court properly considered the "most relevant" statutory factors. He asserts that although the trial court determined that the marriage was one of relatively short duration and the parties should be returned as closely as possible to their respective pre-marriage financial situations, the court actually placed Wife in a far better position than she had been prior to the marriage. Upon careful review of the record and applicable authorities,

we conclude that the trial court properly considered the relevant statutory factors and did not abuse its discretion when distributing the marital estate.

The version of Tennessee Code Annotated § 36-4-121(c) (West July 1, 2018, to March 30, 2022) in effect at the time the divorce complaint was filed provided:

(c)    In making equitable division of marital property, the court shall consider all relevant factors including:

    (1)    The duration of the marriage;

    (2)    The age, physical and mental health, vocational skills, employability, earning capacity, estate, financial liabilities and financial needs of each of the parties;

    (3)    The tangible or intangible contribution by one (1) party to the education, training or increased earning power of the other party;

    (4)    The relative ability of each party for future acquisitions of capital assets and income;

    (5)(A)    The contribution of each party to the acquisition, preservation, appreciation, depreciation or dissipation of the marital or separate property, including the contribution of a party to the marriage as homemaker, wage earner or parent, with the contribution of a party as homemaker or wage earner to be given the same weight if each party has fulfilled its role;

    (B)    For purposes of this subdivision (c)(5), dissipation of assets means wasteful expenditures which reduce the marital property available for equitable distributions and which are made for a purpose contrary to the marriage either before or after a complaint for divorce or legal separation has been filed;

    (6)    The value of the separate property of each party;

    (7)    The estate of each party at the time of the marriage;

(8)     The economic circumstances of each party at the time the division of property is to become effective;

(9)     The tax consequences to each party, costs associated with the reasonably foreseeable sale of the asset, and other reasonably foreseeable expenses associated with the asset;

(10)    In determining the value of an interest in a closely held business or similar asset, all relevant evidence, including valuation methods typically used with regard to such assets without regard to whether the sale of the asset is reasonably foreseeable. Depending on the characteristics of the asset, such considerations could include, but would not be limited to, a lack of marketability discount, a discount for lack of control, and a control premium, if any should be relevant and supported by the evidence;

(11)    The amount of social security benefits available to each spouse; and

(12)    Such other factors as are necessary to consider the equities between the parties.

In the instant action, the trial court found that the parties had been married for approximately five years at the time of their separation and for seven years and six months at the time of trial. The court determined this to be a marriage of short duration. *See Ricketts v. Ricketts*, No. M2005-00022-COA-R3-CV, 2006 WL 2842717, at *8 (Tenn. Ct. App. Oct. 3, 2006) ("Courts have considered marriages of five, seven, and eight years to be of relatively 'short' duration.") (citing examples). Regarding the effect of a short-term marriage on the equitable distribution of a marital estate, this Court has held:

Tenn. Code Ann. § 36-4-121(c)(1) permits trial courts to consider the duration of the marriage. In cases involving a marriage of relatively short duration, it is appropriate to divide the property in a way that, as nearly as possible, places the parties in the same position they would have been in had the marriage never taken place.

*Batson v. Batson*, 769 S.W.2d 849, 859 (Tenn. Ct. App. 1988).

As this Court subsequently explained:

> *Batson* was a divorce case involving parties who were married a little more than five years prior to their separation. In discussing the division of marital property we noted:

>> A trial court's division of marital property is to be guided by the factors contained in Tenn. Code Ann. § 36-4-121(c). However, an equitable property division is not necessarily an equal one. It is not achieved by a mechanical application of the statutory factors, but rather by considering and weighing the most relevant factors in light of the unique facts of the case.

> *Batson*, 769 S.W.2d at 859. In determining that the marital property need not be divided equally but, rather, that the parties should be restored to their "pre-marriage financial condition," we took into account a number of specific considerations in addition to the length of the marriage. We considered the fact that husband's net worth was over ten times that of his wife and his annual income was nine times larger than wife's at the time of their marriage; that the parties supported themselves during the marriage primarily on husband's income; that a large part of the marital property consisted of the increase in value of husband's retirement accounts, which would be diminished if liquidated; and that the wife's non-monetary contributions were best considered as part of the award of separate maintenance and support. *Id.*

> * * *

> Although the duration of the marriage is listed as the first factor in Tenn. Code Ann. § 36-4-121(c), "this should not [be] interpreted to mean that this factor should always carry more weight than the others. The factors are not listed in order of importance, and each is to be considered in relation to the specific facts of each case." *Powell v. Powell*, 124 S.W.3d 100, 108 n.8 (Tenn. Ct. App. 2003).

*Bates v. Bates*, No. M2010-02590-COA-R3-CV, 2012 WL 2412447, at *4 (Tenn. Ct. App. June 26, 2012); *see Howard v. Howard*, No. E2014-01991-COA-R3-CV, 2015 WL 6551059, at *12 (Tenn. Ct. App. Oct. 29, 2015) (noting that the duration of a marriage should be placed "in the context of other statutory factors to be considered by the trial court").

Although in her principal brief Wife does not explain how she would have this Court modify the distribution of marital property, she does explain in her reply brief that she is asking this Court to adopt the proposed distribution she presented as an exhibit at trial. Regarding the disputed marital property, Wife proposed at trial that she be awarded the Marital Residence, half of the Warehouse Way checking account, a First Citizens Bank checking account in her name, half of a First Horizon Bank checking account in Husband's name, half of the funds from the sale of a camper vehicle to Husband's son, a coffee table, and two end tables. Wife also proposed that the mortgage debt associated with the Marital Residence be assessed to Husband and that he pay $2,500.00 in transitional alimony to her until the mortgage debt was paid off and for an additional six months thereafter.

In its final decree, the trial court expressly rejected Wife's proposed distribution, stating:

> The Court specifically finds that Wife's proposed division of the alleged marital estate was unreasonable. Wife's proposal was that she receive the [Marital Residence] free of debt and receive alimony until the [Marital Residence] was paid off and then for additional months after the [Marital Residence] was paid off plus additional marital assets, including those the Court has found to be Husband's separate property.

The trial court awarded to Husband the Marital Residence while also determining that Wife should receive $25,000.00 from Husband as a portion of the parties' equity in the Marital Residence.

On appeal, Wife submitted a Tennessee Court of Appeals Rule 7 table as an appendix to her brief, indicating the valuation and distribution of assets as awarded by the trial court.[4] The Rule 7 table indicates that among the other disputed items she requested in her proposal, the trial court awarded to Wife her First Citizens Bank checking account (valued at $7,253.00), half of the sale proceeds ($4,000.00) from the camper vehicle sale, and the coffee table and end tables in dispute (valued at $50.00). The court awarded to Husband his First Horizon checking account (valued at $2,632.15) and half of the sale proceeds ($4,000.00) from the camper vehicle sale.

On appeal, neither party disputes the trial court's determination that the Marital Residence was marital property. According to the trial court's findings, at the time of trial the Marital Residence had a market value of approximately $400,000.00 and

---

[4] Husband has presented no corrections to Wife's Rule 7 table.

provided the parties with approximately $128,000.00 in equity. The court assessed Husband with the entire mortgage debt. Regarding the parties' respective contributions to the value of the Marital Residence, the court made the following specific findings of fact:

> In October 2018, Husband bought a farm located at . . . Lead Mine Valley Road, Cleveland, Tennessee 37311 (["Marital Residence"]) with his separate funds but put Wife's name on the deed. Husband's separate funds to acquire the [Marital Residence] included using a line-of-credit that Husband's company, Warehouse Way, held to fund the initial acquisition of the [Marital Residence]. Wife claims to have deposited the proceeds from the sale of her separate residence into the joint account, which Husband disputes, but she acknowledged that she put no money into the acquisition of the [Marital Residence]. Husband paid off the Warehouse Way line-of-credit from the proceeds of the sale of his separate residence and has made all house payments since the [Marital Residence] was acquired, even following the parties' separation. Wife's credit was not used to acquire the [Marital Residence]. So, the Wife did not contribute anything tangible to the acquisition of the [Marital Residence], but her name was on the deed and the parties treated the [Marital Residence] as their marital residence.

The trial court also found that following the parties' separation, Wife had "received the benefit of residing" at the Marital Residence while Husband had "paid all, or nearly all" of the related expenses.

Wife acknowledged during trial that Warehouse Way was Husband's separate property, but she maintained that the related business bank account was marital property due to her contributions to the business. In determining that the Warehouse Way bank account was Husband's separate property, the trial court specifically found:

> Wife claimed during the marriage that she substantially increased the value of Warehouse Way, but the Court finds there is no evidence to support this contention. The Court finds that the management of Warehouse Way primarily centered on collecting approximately six (6) rent checks, which were deposited into the Warehouse Way account, and managing the maintenance of the property. The Court finds that Wife breached Husband's trust and harmed Warehouse Way by withdrawing money, without Husband's consent, from Warehouse Way's account, and that this withdrawal unnecessarily caused Husband to incur a tax liability and have related issues with his Social Security rights. The Court finds that Wife did not substantially assist in the management of Warehouse Way nor

increase its value and that Warehouse Way was, and remained, Husband's separate property.

When distributing the marital estate in this case, the trial court relied on this Court's decision in *Webb v. Webb*, No. W2021-01227-COA-R3-CV, 2023 WL 568331 (Tenn. Ct. App. Jan. 27, 2023). A divorce case, *Webb* involved what this Court determined to be a short-term marriage of six years' duration at the time of trial. *Id.* at *2. Affirming the trial court's distribution of the marital estate, the *Webb* Court cited *Batson* for the principle that "it was appropriate [for the trial court] to 'divide the property in a way that, as nearly as possible, places the parties in the same position they would have been in had the marriage never taken place.'" *Id.* at *3 (quoting *Batson*, 769 S.W.2d at 859). The *Webb* Court also emphasized principles set forth in *Batson* that in a short-term marriage, "each spouse's contributions to the accumulation of assets during the marriage is an important factor," and "the significance and value of a spouse's non-monetary contributions is diminished." *Id.*

In this action, the trial court summarized its overall distribution of the marital estate as follows:

> The Court finds that, as documented above, it has awarded $28,000 of marital personal property to Husband and $14,000 of marital personal property to Wife. Wife's $14,000, however, must be increased by including the $14,000 Wife took from the Warehouse Way account, the $6,500 she requested and received from this Court to have an appraiser value Warehouse Way, and $4,000 of alimony *pendente lite* she received from Husband, and so she has approximately $94,000 of value between her separate property and her awarded portion of the marital property after including these additional amounts.

> The Court, in accordance with *Webb* and *Ricketts*, finds that the parties' marriage is short-term under Tennessee law and that the parties should be returned, as near as possible, to the positions they held prior to their marriage. In making this equitable division, the Court takes into account that Wife's net worth was between $12,000 and $17,000 prior to her marriage to Husband, she received at least $30,000 in gifts and other money from Husband, she has used Husband's money to subsidize her mother's care, her granddaughter's tuition, and gave additional money to her daughter, son-in-law, [B.L.], and [D.L.], she has been residing at the [Marital Residence] for two (2) years at Husband's expense while she has not looked for employment, she has received $4,000 in alimony *pendente lite*, and she has received $6,500 for an appraiser to appraise Husband's

- 15 -

separate property, Warehouse Way. The Court also takes into account that Wife has property of $94,000 from her separate property and the marital property awarded in this divorce. Husband, moreover, has created most, if not all, of the marital property through his income from his businesses, which were separate property, and acquired the [Marital Residence] with his separate funds and paid all expenses related to the [Marital Residence] from his income from separate assets. Additionally, Wife is unemployed, as she was when she met Husband in February 2015, and has lived cost free at the [Marital Residence] for two (2) years while she knew this marriage was ending and yet she dd not seek out employment. While Husband's net worth is over $1,000,000, this does not mean that Wife should receive a larger percentage of the marital estate when considered against *Webb* and that line of cases. Accordingly, pursuant to *Webb*, the Court is to put the parties back to their positions prior to marriage.

Taking into account all of the circumstances and the teachings of *Webb*, the Court holds, in addition to the separate and marital property previously awarded to Wife, that Wife shall be awarded an additional $25,000 from the equity of the [Marital Residence] and that the Husband shall be awarded the [Marital Residence]. Husband shall be permitted to pay this $25,000 in equal monthly installments over twelve (12) months (*i.e.*, $2,083.33/month) beginning the month after the entry of this order.

Wife essentially argues that the trial court focused on the short duration of the marriage at the expense of fully considering other relevant factors provided in Tennessee Code Annotated § 36-4-121(c). Specifically, Wife asserts that the court "did not adequately consider" (1) the relative ability of each party to acquire future income (factor four), (2) Wife's contributions to the marital assets and to Husband's businesses (factor five), (3) Wife's age (factor two), and (4) the effect the marriage had on Wife's Social Security benefits (factor eleven). At the outset, we note that the trial court did not set forth a factor-by-factor analysis in the section of its final decree devoted to the distribution of marital property. However, upon review of the court's order as a whole, including its factual findings and analysis related to spousal support, we conclude that the court did sufficiently consider the property distribution factors relied upon by Wife as well as other relevant factors. *See Larsen-Ball v. Ball*, 301 S.W.3d 228, 235 (Tenn. 2010) ("Although the trial court did not track the exact language of the statutory factors, its findings clearly reflect its consideration of the factors.").[5]

---

[5] Our Supreme Court in *Larsen-Ball* nonetheless "encourage[d] trial courts to make specific findings of fact with respect to each statutory factor enumerated in Tennessee Code Annotated section 36-4-121(c) to aid in the disposition of cases on appeal." *Larsen-Ball*, 301 S.W.3d 235 n.4.

Regarding factor four (the relative ability of each party for future acquisitions of capital assets and income), the trial court found that Wife had been unemployed since a few months before she and Husband met in February 2015 and that she had remained unemployed outside the home throughout the marriage and pendency of the divorce. In its factual findings, the court stated that prior to meeting Husband, Wife "had worked for a number of years as a bookkeeper for a construction company earning between $52,000/year and $60,000/year in the last years of her employment." She had "voluntarily resigned her employment in December 2014 and withdrawn all of her retirement savings and was living off of these funds and her other savings, which were rapidly decreasing." The court further found that during the marriage, Wife had been employed part-time as a bookkeeper for Golf Carts and had collected rent deposits for Warehouse Way. Despite what the court found to be Wife's demonstrated earning capacity, she did not seek employment during the pendency of the divorce. Within its analysis of Wife's need for spousal support, the court stated: "Rather than make preparations to live as a single woman, Wife chose to request for this Court to award her the marital residence . . . free and clear, half of Husband's Warehouse Way bank account, and alimony." However, within the spousal support analysis, the court did find that Husband had a higher earning capacity than Wife through his business income and that he had greater financial resources than Wife.

In relation to factor five (the contribution of each party to the acquisition, preservation, appreciation, depreciation or dissipation of marital or separate property), Wife contends that the trial court did not adequately consider the care she provided to Husband after he informed her that he had Parkinson's disease, the care she provided to the Marital Residence, or her contributions to Warehouse Way and Golf Carts. Trial testimony was inconclusive regarding Husband's health. Wife testified that Husband had informed her that a "Parkinson's medicine" he had been prescribed had "made him sick" and that he had been prescribed a different medication. She maintained that Husband had told her that she should not work outside the home, other than for his businesses, because she "needed to take care of him." According to Wife, throughout the marriage, she maintained the household and cooked for Husband. Husband disputed this testimony. In its final decree, the trial court noted the "controversy over whether Husband had a chronic debilitating illness" and found that Wife had not made "tangible contributions to the marriage or to Husband's separate property." We reiterate that "[w]hen a marriage is short, the significance and value of a spouse's non-monetary contributions is diminished." *Batson*, 769 S.W.2d at 859.

Concerning Husband's businesses, the trial court found that Wife had worked as a bookkeeper for Golf Carts and had collected rental deposits for Warehouse Way. However, the court also credited Husband's testimony that Wife had been paid for her work with Golf Carts. Regarding Warehouse Way, the court found that Wife's

- 17 -

contributions had been minimal because she "did not substantially assist in the management of Warehouse Way nor increase its value." Moreover, the court found that following the parties' separation, "Wife took somewhere between $30,000 and $40,000 from the Warehouse Way bank account . . . without Husband's consent" and that she "spent this money during the pendency of the divorce." The court credited Husband's testimony that Wife's "unauthorized withdrawal reduced the Warehouse Way bank account balance to a dangerously low amount." Although the court did not make an express finding of dissipation, it certainly considered Wife's depletion of Warehouse Way funds in opposition to what it found to have been a minimal contribution made by Wife to the business. Additionally, the court determined that during the marriage, Wife had "used Husband's money to subsidize her mother's care, her granddaughter's tuition, and [had given] additional money" to her daughter and son-in-law as well as to Husband's son and daughter-in-law. Contrary to Wife's argument, the trial court considered whether Wife's actions had contributed to or depleted the parties' assets and found that overall, her actions had not contributed value.

Finally, Wife argues that the trial court failed to adequately consider her age (factor two) and the effect the marriage had on the Social Security benefits available to her (factor eleven). In analyzing spousal support factors, the trial court made specific factual findings regarding the parties' respective ages, stating: "Husband is older than Wife as he is 67 and she is 63." The court also noted that Wife was in "good health." Certainly, Wife's age may be a consideration in her ability to obtain future employment after several years out of the workforce. However, as the trial court also found, Wife presented no evidence of any attempt on her part to obtain employment during the pendency of the divorce. Furthermore, Wife acknowledged that she had voluntarily left her position as a bookkeeper with a construction company a few months prior to meeting Husband in 2015. Here, she urges that she could have been receiving a higher amount of Social Security benefits but for the marriage. This argument is highly speculative and is not supported by any evidence presented by Wife other than her testimony that Husband had preferred she not work outside the home or his businesses. We find Wife's arguments regarding the court's consideration of her age and Social Security benefits to be unavailing.

Wife also contends that the trial court should not have relied on *Webb* because the facts of that case are distinguishable given that the parties in *Webb* had similar incomes and the wife had a higher earning capacity than the husband. *See Webb*, 2023 WL 568331, at *3. By contrast, the trial court in the instant case found that Wife had a lower income and earning capacity than Husband. Upon review, we disagree with Wife's implication that this factual distinction renders inapplicable the principles set forth in *Webb* regarding a short-term marriage. As in *Webb*, the trial court in this case compared the parties' respective financial situations prior to the marriage, their current

- 18 -

circumstances, and other equitable distribution factors to return the parties as nearly as possible to the positions they were in prior to the marriage. *See id.*

Furthermore, Wife does not dispute the trial court's findings that her net worth prior to the marriage was between $12,000.00 and $17,000.00 while her separate property and the marital property awarded to her in the divorce equaled $94,000.00 before the court granted her an additional $25,000.00 in equity from the Marital Residence. In part, this was due to an increase in the value of Wife's separate property that was unrelated to the marriage because she had inherited approximately $56,000.00 from her mother. However, she had also increased her separate property during the marriage through gifts given to her by Husband, and it is clear that her net worth will be appreciably more after the divorce than it was prior to the marriage. Considering all the facts related to the relevant factors, including the parties' short-term marriage, we discern no abuse of discretion in the trial court's equitable distribution of the marital estate.

## V. Alimony

Wife asserts that the trial court abused its discretion by not awarding her a longer period of transitional alimony and by denying her request for an award of attorney's fees and expenses as alimony *in solido*. Although Wife initially sought awards of alimony *in futuro* and rehabilitative alimony in her counter-complaint, she has not raised an issue on appeal regarding the court's denial of these two types of spousal support. Husband raises his own issue concerning transitional alimony, arguing that the trial court erred by granting to Wife any alimony at all because Wife did not demonstrate a need for spousal support. Accordingly, Husband also maintains that the trial court properly denied Wife's request for alimony *in solido*.

Tennessee law recognizes four types of spousal support: (1) alimony *in futuro*, also known as periodic alimony; (2) alimony *in solido*, also known as lump-sum alimony; (3) rehabilitative alimony; and (4) transitional alimony. Tenn. Code Ann. § 36-5-121(d) (West March 31, 2022, to current); *Mayfield v. Mayfield*, 395 S.W.3d 108, 115 (Tenn. 2012). Our statutory scheme indicates a legislative preference favoring short-term spousal support, rehabilitative and transitional alimony, over the long-term types of support, alimony *in futuro* and alimony *in solido*. *See* Tenn. Code Ann. § 36-5-121(d)(2)-(3); *Mayfield*, 395 S.W.3d at 115; *Riggs v. Riggs*, 250 S.W.3d 453, 456 (Tenn. Ct. App. 2007). Rehabilitative alimony "'is designed to increase an economically disadvantaged spouse's *capacity* for self-sufficiency.'" *See Mayfield*, 395 S.W.3d at 115 (quoting *Gonsewski,* 350 S.W.3d at 109). By contrast, transitional alimony, awarded by the trial court in the case at bar, "is appropriate when a court finds that rehabilitation is not required but that the economically disadvantaged spouse needs financial assistance in

adjusting to the economic consequences of the divorce." *See Gonsewski*, 350 S.W.3d at 109 (citing Tenn. Code Ann. § 36-5-121(d)(4), (g)(1); *Riggs*, 250 S.W.3d at 456 n.5).

Tennessee Code Annotated § 36-5-121(i) (West March 31, 2022, to current) provides the following factors to be considered, as relevant, when determining whether an award of spousal support is appropriate, and if so, "the nature, amount, length of term, and manner of payment" to be awarded:

(1)   The relative earning capacity, obligations, needs, and financial resources of each party, including income from pension, profit sharing or retirement plans and all other sources;

(2)   The relative education and training of each party, the ability and opportunity of each party to secure such education and training, and the necessity of a party to secure further education and training to improve such party's earnings capacity to a reasonable level;

(3)   The duration of the marriage;

(4)   The age and mental condition of each party;

(5)   The physical condition of each party, including, but not limited to, physical disability or incapacity due to a chronic debilitating disease;

(6)   The extent to which it would be undesirable for a party to seek employment outside the home, because such party will be custodian of a minor child of the marriage;

(7)   The separate assets of each party, both real and personal, tangible and intangible;

(8)   The provisions made with regard to the marital property, as defined in § 36-4-121;

(9)   The standard of living of the parties established during the marriage;

(10)  The extent to which each party has made such tangible and intangible contributions to the marriage as monetary and homemaker contributions, and tangible and intangible contributions by a party to the education, training or increased earning power of the other party;

(11)   The relative fault of the parties, in cases where the court, in its discretion, deems it appropriate to do so; and

(12)   Such other factors, including the tax consequences to each party, as are necessary to consider the equities between the parties.

As our Supreme Court has elucidated, "[a]lthough each of these factors must be considered when relevant to the parties' circumstances, 'the two that are considered the most important are the disadvantaged spouse's need and the obligor spouse's ability to pay.'" *Gonsewski*, 350 S.W.3d at 110 (quoting *Riggs*, 250 S.W.3d at 457). Moreover, this Court has confirmed that when "considering these two factors, the primary consideration is the disadvantaged spouse's need." *Murdock v. Murdock*, No. W2019-00979-COA-R3-CV, 2022 WL 611024, at *14 (Tenn. Ct. App. Mar. 2, 2022). It is well settled that "trial courts in Tennessee have broad discretion to determine whether spousal support is needed and, if so, to determine the nature, amount, and duration of the award." *Mayfield*, 395 S.W.3d at 114; *see also Fickle v. Fickle*, 287 S.W.3d 723, 736 (Tenn. Ct. App. 2008).

The trial court made the following specific findings of fact and conclusions of law concerning Wife's requests for spousal support:

In application of the factors, Wife received $6,500 toward her expert and she was given the opportunity to transition into being single, but she chose not to make preparations. *See* Tenn. Code Ann. § 36-5-121(i)(12). Rather than make preparations to live as a single woman, Wife chose to request for this Court to award her the [Marital Residence] (which is a $400,000 property), free and clear, half of Husband's Warehouse Way bank account, and alimony. *See* Tenn. Code Ann. § 36-5-121(i)(12). Wife admits that if she had obtained employment consistent with her demonstrated earning capacity, that she would not need alimony. *See* Tenn. Code Ann. § 36-5-121(i)(1). Wife admits she had cashed in her retirement accounts prior to meeting Husband in February 2015. *See* Tenn. Code Ann. § 36-5-121(i)(12). Husband has a higher earning capacity than Wife (and the Court finds that his income from Warehouse Way is higher than he testified) and more financial resources. *See* Tenn. Code Ann. § 36-5-121(i)(1). The parties presented proof related to their retirement accounts and pensions, if any, in Exhibit 1. *See* Tenn. Code Ann. § 36-5-121(i)(7). Wife has more education than Husband as she has some college education whereas Husband only graduated from high school. *See* Tenn. Code Ann. § 36-5-121(i)(2). The parties separated after they had been married for 5 1/2 years and they had been married for nearly 7 years at the time of trial and

- 21 -

so this is a short-term marriage. *See* Tenn. Code Ann. § 36-5-121(i)(3). Husband is older than Wife as he is 67 and she is 63. *See* Tenn. Code Ann. § 36-5-121(i)(4). Wife is in good health, but there is a controversy over whether Husband had a chronic debilitating illness or not. *See* Tenn. Code Ann. § 36-5-121(i)(5). The parties do not have children together and neither has minor children to care for that would make employment outside the home improper. *See* Tenn. Code Ann. § 36-5-121(i)(6). The parties enjoyed a nice standard of living during their marriage. *See* Tenn. Code Ann. § 36-5-121(i)(9). Wife did not make tangible contributions to the marriage or to Husband's separate property. *See* Tenn. Code Ann. § 36-5-121(i)(10). Wife, however, has been maintaining the [Marital Residence] after the separation according to her testimony. *See* Tenn. Code Ann. § 36-5-121(i)(10). Wife worked for Husband's separate business, Golf Carts of Chattanooga, for a time and was paid for her services. *See* Tenn. Code Ann. § 36-5-121(i)(10). Husband is at fault for the divorce. *See* Tenn. Code Ann. § 36-5-121(i)(11). There was no proof of tax consequences. *See* Tenn. Code Ann. § 36-5-121(i)(12). The parties both had credibility issues at trial. *See* Tenn. Code Ann. § 36-5-121(i)(12). Wife managed the parties' bank accounts and wrote at least $18,000 of checks to herself from Warehouse Way without Husband's permission. *See* Tenn. Code Ann. § 36-5-121(i)(12). Wife filed an under-oath request for exclusive possession of the marital residence, and swore that she did not have any family in the area, but then admitted that her sister (the same one that gave her $40,000) lived 20 minutes away. *See* Tenn. Code Ann. § 36-5-121(i)(12). Husband has been inconsistent about his income in this divorce. *See* Tenn. Code Ann. § 36-5-121(i)(12).

Based on the application of the statutory factors, the Court finds that Wife may continue to reside at the [Marital Residence] for up to six (6) months. During these six (6) months, Husband will pay the house payment and taxes for the [Marital Residence] and $1,500/month in transitional alimony to Wife. Wife's requests for alimony *in futuro* and/or rehabilitative alimony are denied for lack of proof in this short-term marriage.

Upon thorough review, we conclude that the evidence preponderates in favor of the trial court's findings that Wife had the need for and Husband had the ability to pay transitional alimony in the amount of $1,500.00 monthly for a period of six months. Notwithstanding Wife's need for some spousal support, we also conclude that the evidence supports the trial court's finding that Wife had the resources to pay her attorney's fees and expenses incurred in the divorce. We discern no abuse of discretion

- 22 -

in either the trial court's award to Wife of transitional alimony or the court's denial of Wife's request for alimony *in solido*.

## A. Transitional Alimony

Regarding transitional alimony, Tennessee Code Annotated § 36-5-121(g)(1) (West March 31, 2022, to current) provides:

> Transitional alimony means a sum of money payable by one (1) party to, or on behalf of, the other party for a determinate period of time. Transitional alimony is awarded when the court finds that rehabilitation is not necessary, but the economically disadvantaged spouse needs assistance to adjust to the economic consequences of a divorce, legal separation or other proceeding where spousal support may be awarded, such as a petition for an order of protection.

As our Supreme Court has explained:

> Simply put, this type of [transitional] alimony "aid[s] the person in the transition to the status of a single person." *Mills v. Mills*, No. M2009-02474-COA-R3-CV, 2010 WL 3059170, at *5 (Tenn. Ct. App. Aug. 4, 2010); *see also Montgomery v. Silberman*, No. M2009-00853-COA-R3-CV, 2009 WL 4113669, at *2 (Tenn. Ct. App. Nov. 24, 2009) (affirming trial court's award of transitional alimony to wife "to bridge the gap, so to speak, between her married life and single life"); *Engesser v. Engesser*, 42 So. 3d 249, 251 (Fla. Dist. Ct. App. 2010) (en banc) (describing transitional alimony as "[b]ridge-the-gap alimony" designed to "smooth the transition of a spouse from married to single life"). In contrast to rehabilitative alimony, which is designed to increase an economically disadvantaged spouse's *capacity* for self-sufficiency, transitional alimony is designed to aid a spouse who already possesses the capacity for self-sufficiency but needs financial assistance in adjusting to the economic consequences of establishing and maintaining a household without the benefit of the other spouse's income. As such, transitional alimony is a form of short-term support. Transitional alimony is payable for a definite period of time and may be modified only upon certain circumstances: (1) the parties agree that it may be modified; (2) the court provides for modification in the divorce decree; or (3) the recipient spouse resides with a third person following the divorce. Tenn. Code Ann. § 36-5-121(g)(2).

*Gonsewski*, 350 S.W.3d at 109.

On appeal, Husband does not dispute the trial court's finding that he had the ability to pay the amount of support ordered. Instead, the parties' arguments focus on whether Wife demonstrated the need for transitional alimony. Wife argues that six months is not enough time for her to transition from residing at the Marital Residence (with related expenses paid) to the economic realities of her situation after the divorce. Regarding her employment status, Wife states in her appellate brief:

> Although the Final Decree notes that [Wife] admitted that if she had obtained employment, she would not need alimony, [Wife] did not obtain employment. Thus, [Wife] has a need for alimony.

Wife urges this Court to find that she "should have been awarded transitional alimony for three years with [the] amount being paid each month cut in half for the third year." Wife maintains that this longer duration "would have further incentivized [her] to look for work and to adjust to the consequences of divorce."

Husband responds that Wife is inappropriately attempting to wield her unemployment as a "sword" to obtain additional transitional alimony. He argues that Wife was left with adequate resources from the marital estate and that she "only has herself to blame" if she is unprepared for the economic realities of divorce because she did not prepare during the pendency of the divorce, did not save funds she had obtained during the marriage, and did not seek employment. Husband urges this Court to find that the trial court erred by awarding any transitional alimony to Wife. Upon careful review, we decline to do so.

The trial court properly considered all statutory factors, and its findings are supported by the evidence. Although the court determined that Wife had benefited from residing in the Marital Residence for two years without seeking employment and while Husband paid the related expenses, the court also found Husband at fault in the divorce and noted Wife's testimony that she had maintained the Marital Residence throughout the divorce proceedings. Moreover, although Wife had the capacity for self-sufficiency, we find no abuse of discretion in the trial court's determination that Wife needed some financial assistance to adjust to the economic consequences of establishing and maintaining a household without the benefit of Husband's income. *See Gonsewski*, 350 S.W.3d at 109.

As Husband points out, Wife's proposal for three years of tapered transitional alimony was not raised in the trial court. In support of her proposal, Wife relies on this Court's decision in *April H. v. Scott H.*, No. M2018-00759-COA-R3-CV, 2019 WL 2085741, at *5 (Tenn. Ct. App. May 13, 2019), wherein this Court affirmed the trial

- 24 -

court's award of "$1,000 in transitional alimony for six months tapering to $500 per month for six additional months." In her reply brief, Wife explains that she offered *April H.* as an "illustrative example of an award of transitional alimony that would be within the range of acceptable alternatives given the fact that [Wife] was not awarded the Marital Residence." At trial, Wife proposed that she be awarded the Marital Residence and $2,500.00 in transitional alimony while Husband paid the mortgage debt and for six months beyond the resolution of that debt. On appeal, Wife argues that given the fact that she was not awarded the Marital Residence, it was an abuse of discretion for the trial court not to award her a longer duration of transitional alimony, and she presents the tapered approach from *April H.* as a model of an "acceptable alternative[]."

The flaw in Wife's argument is that upon the trial court's application of the statutory factors, the court had broad discretion to fashion an award of spousal support it found appropriate to assist Wife in transitioning to the economic realities of divorce. *See April H.*, 2019 WL 2085741, at *3 ("[T]rial courts in Tennessee have broad discretion to determine whether spousal support is needed and, if so, to determine the nature, amount, and duration of the award." (quoting *Mayfield*, 395 S.W.3d at 114)). As Wife notes, the *April H.* Court concluded in part that the trial court's tapered approach would give the wife, whom the trial court had found to have the ability and education to obtain sufficient employment, "time to find employment and the motivation to do so." *April H.*, 2019 WL 2085741, at *5. However, this Court reached that conclusion while affirming the trial court's discretionary decision, not second-guessing or tweaking it. *Id.* Here, we determine that the award of transitional alimony was supported by the evidence, and we find no reason to second-guess or tweak it. *See id.* at *3 ("Appellate courts are generally disinclined to second-guess a trial judge's spousal support decision unless it is not supported by the evidence." (quoting *Kinard*, 986 S.W.2d at 234)). We affirm the trial court's award to Wife of transitional alimony in its entirety.

## B. Alimony *in Solido*

Wife posits that the trial court abused its discretion by denying her request for an award of attorney's fees and expenses as an award of alimony *in solido* because "requiring her to pay her attorney fees would deplete her assets." Regarding such an award, our Supreme Court has instructed:

> It is well-settled that an award of attorney's fees in a divorce case constitutes alimony in solido. The decision whether to award attorney's fees is within the sound discretion of the trial court. As with any alimony award, in deciding whether to award attorney's fees as alimony in solido, the trial court should consider the factors enumerated in Tennessee Code Annotated section 36-5-121(i). A spouse with adequate property and

income is not entitled to an award of alimony to pay attorney's fees and expenses. Such awards are appropriate only when the spouse seeking them lacks sufficient funds to pay his or her own legal expenses or the spouse would be required to deplete his or her resources in order to pay them. Thus, where the spouse seeking such an award has demonstrated that he or she is financially unable to procure counsel, and where the other spouse has the ability to pay, the court may properly grant an award of attorney's fees as alimony.

*Gonsewski*, 350 S.W.3d at 113 (citations omitted). Alimony *in solido* "may be awarded in lieu of or in addition to any other alimony award, in order to provide support, including attorney fees, where appropriate." *Id.* at 108 (quoting Tenn. Code Ann. § 36-5-121(d)(5)). "When reviewing the trial court's decision to award attorney's fees as alimony *in solido*, we must consider the same factors contained in Tennessee Code Annotated § 36-5-121(i) that we considered when analyzing the transitional alimony award." *Buntin v. Buntin*, 673 S.W.3d 593, 612 (Tenn. Ct. App. 2023).

We have previously determined that the trial court based its award to Wife of transitional alimony upon application of the relevant statutory factors to the evidence presented at trial. In its divorce decree, the court set Wife's request for alimony *in solido* for a subsequent hearing. Following this hearing, the court denied Wife's request, making the following specific findings:

> [T]he Court hereby finds that [Wife's] net worth at the end of this marriage, has increased approximately six (6) times. She has adequate funds from which she can pay her attorney fees, based on her separate property which was an inheritance and based upon the funds she has obtained from [Husband]. This is a relatively short marriage and the Court relies on the factors stated in its final decree in analyzing the need for alimony in solido.
>
> [Husband] has supported and maintained [Wife] for two (2) years during the parties' separation, in addition to the five (5) years of marriage, and after considering all of the factors, the Court finds [Wife] is not entitled to other alimony in this case for the payment of attorney fees.

We determine that the evidence preponderates in favor of the trial court's findings regarding alimony *in solido*.

Wife argues that she should not be required to deplete funds received through her inheritance and her portion of the marital estate to pay her attorney's fees because she is the economically disadvantaged spouse, her standard of living has decreased compared to

the standard the parties enjoyed during the marriage, and she contributed to the marriage as a homemaker. In analyzing the statutory factors, the trial court considered the difference in the parties' respective financial states prior to the marriage as well as the parties' standard of living during the marriage. The court also considered that Wife had written "at least $18,000 of checks to herself from Warehouse Way without Husband's permission" and that she had received $40,000.00 in funds from her sister in addition to a $56,000.00 inheritance from her mother.[6] We agree with the trial court's finding that Wife had adequate resources to pay her attorney's fees.

Additionally, as noted in a previous section of this Opinion, the trial court properly weighed the short duration of the marriage when considering the parties' relative contributions. *See Batson*, 769 S.W.2d at 859 ("When a marriage is short, the significance and value of a spouse's non-monetary contributions is diminished."). We conclude that the trial court did not abuse its discretion in denying Wife's request for attorney's fees and expenses as alimony *in solido*.

## VI. Attorney's Fees on Appeal

Wife requests an award of attorney's fees on appeal, averring that she is an economically disadvantaged spouse and that Husband has the ability to pay her attorney's fees. Husband opposes Wife's request and seeks his own award of attorney's fees on appeal, asserting that Wife's appeal is frivolous and devoid of merit pursuant to Tennessee Code Annotated § 27-1-122. Wife replies that Husband's request should be denied because her appeal has merit.

As this Court has explained:

> In divorce proceedings, the recovery of attorney's fees by a litigant is provided for by statute which provides that a spouse seeking enforcement of an alimony or custody award in a decree may be granted attorney's fees in the discretion of the court before whom the action is pending. Tenn. Code. Ann. [§] 36-5-103(c) (2003).
>
> The discretion to award attorney's fees on appeal in a proceeding of this nature rests within the discretion of the Court. *Archer v. Archer*, 907 S.W.2d 412, 419 (Tenn. Ct. App. 1995). When considering a request for attorney's fees on appeal, we also consider the requesting party's ability to pay such fees, the requesting party's success on appeal, whether the

---

[6] Wife's sister, G.A., testified that she expected Wife to pay back the $40,000.00 she had given Wife, but G.A. also stated that she had never asked for the money to be repaid.

requesting party sought the appeal in good faith, and any other equitable factors relevant in a given case.

*Chase v. Chase*, 670 S.W.3d 280, 304-05 (Tenn. Ct. App. 2022) (quoting *Darvarmanesh v. Gharacholou*, No. M2004-00262-COA-R3-CV, 2005 WL 1684050, at *16 (Tenn. Ct. App. July 19, 2005)).

Regarding damages for frivolous appeals, Tennessee Code Annotated § 27-1-122 (West 1975 to current) provides:

> When it appears to any reviewing court that the appeal from any court of record was frivolous or taken solely for delay, the court may, either upon motion of a party or of its own motion, award just damages against the appellant, which may include but need not be limited to, costs, interest on the judgment, and expenses incurred by the appellee as a result of the appeal.

This Court has previously explained:

> Parties should not be forced to bear the cost and vexation of baseless appeals. Accordingly, in 1975, the Tennessee General Assembly enacted Tenn. Code Ann. § 27-1-122 to enable appellate courts to award damages against parties whose appeals are frivolous or are brought solely for the purpose of delay. Determining whether to award these damages is a discretionary decision.
>
> A frivolous appeal is one that is devoid of merit or one that has no reasonable chance of succeeding.

*Young v. Barrow*, 130 S.W.3d 59, 66-67 (Tenn. Ct. App. 2003) (internal citations omitted).

Considering the resources distributed to Wife in the divorce, coupled with her separate property and her overall lack of success on appeal, we exercise our discretion to decline Wife's request for attorney's fees on appeal. However, we do not deem Wife's appeal to have been frivolous or devoid of merit. Therefore, we also decline Husband's request for attorney's fees on appeal. Accordingly, each party will be responsible for his or her own appellate attorney's fees.

## VII. Conclusion

For the foregoing reasons, we affirm the judgment of the trial court in its entirety. We deny the parties' respective requests for awards of attorney's fees on appeal. We remand this case to the trial court for enforcement of the judgment and collection of costs below. Costs on appeal are assessed to the appellant, Kimberly Champion Leonard.

s/ Thomas R. Frierson, II
THOMAS R. FRIERSON, II, JUDGE